736

Juan Rodríguez Pérez et al., Plaintiffs and Appellants, *v.* Banco Popular de Puerto Rico, Defendant and Appellee.

No. 9293. Argued November 4, 1946.—Decided December 21, 1946.

*Luis E. Dubón* and *Félix Ochoteco* for appellants. *Gabriel de la Haba, Damián Monserrat, Jr.,* and *Rafael Baragaño, Jr.,* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

In an alleged oral will José Manuel Rodríguez was declared sole and universal heir of José Rodríguez Pérez, who died in the Auxilio Mutuo Hospital without leaving descend-

ants or ascendants. The heir applied to the District Court of Bayamón for the protocolization of said will and it was so ordered by the court. The alleged heir presented to Banco Popular de Puerto Rico the order of the court as well as a copy of the will and of the deed of protocolization, whereupon the latter delivered the balance of two accounts which the predecessor had in said institution amounting to $41,628.96. Thereafter a brother of the testator residing in Spain challenged the order rendered and after the case was heard in the District Court of San Juan, the will was declared void. Appeal was taken from said judgment which was affirmed by this court. *Rodríguez v. Rodríguez,* 62 P.R.R. 855.

Plaintiffs in the present case, as sole and universal heirs of José Rodríguez Pérez, brought an action against Banco Popular seeking the return of the amounts deposited, alleging that the payment made by said bank to the presumptive heir did not release said entity from its obligation toward the heirs of the deceased depositor for the following reasons: (*a*) because the legitimate heirs of the aforesaid predecessor did not authorize the defendant-appellee to dispose of said amount; (*b*) because since the defendant bank made the payment by virtue of a decision of the District Court of Bayamón which ordered the protocolization of the aforesaid will, and as it was established therein that José Manuel Rodríguez was the heir of José Rodríguez Pérez, without prejudice to third persons, the plaintiffs being such third persons, the payment could not prejudice them; (*c*) because it being expressly stated in the decision ordering the protocolization of the will that the precedessor died intestate, that he had died without leaving ascendents or descendants, Banco Popular de Puerto Rico knew when it made the payment that it was making it without prejudice to third persons: (*d*) because it appears from the aforesaid decision that the person to whom appellee made the payment was not a forced heir and, therefore, his institution as heir could not prejudice third persons; (*e*) because from the evidence presented by

the petitioner and which gave rise to the decision, it also appears that the witnesses who had taken part in the aforesaid will were not the proper witnesses because they were not residents of the place where the act of the last will was executed; and, lastly, (f) because the inheritance tax had not been paid at the time the defendant bank made the payment. Plaintiffs prayed that defendant be ordered to pay to them the amount of their predecessor's accounts less certain deductions which they considered correct.

Defendant filed in the district court a motion for dismissal because the complaint did not state facts sufficient to constitute a cause of action. This motion was granted and the complaint was amended. Another motion for dismissal was filed against the amended complaint which was also granted by the court. Then plaintiffs prayed for judgment on the pleadings and took an appeal from the dismissal of the complaint on the ground that the lower court committed four errors which are based in effect on the same grounds previously set forth under letters (a) to (f). Those marked under letters (a) to (e) may be decided jointly.

Appellants maintain that the relationship between José Rodríguez Pérez, later his heirs, and Banco Popular was that of creditor and debtor and that the only manner in which the debtor could have been released from its obligation was by payment to said heirs pursuant to § 1116 of the Civil Code, which provides that "Payment must be made to the person in whose favor the obligation is constituted, or to another authorized to receive it in his name." Appellants are correct in setting up this first allegation; however, to whom did Banco Popular de Puerto Rico make payment? Was it not precisely to the person "authorized to receive it in his name," that is, to José Manuel Rodríguez declared heir by the court? Furthermore, § 1118 of the Civil Code provides that "A payment made in good faith to the person who is in possession of the credit shall release the debtor."

Commenting on § 1164 of the Spanish Civil Code, equivalent to § 1118 of our Code, Manresa in vol. 8 (1901 ed.), p. 259, of his work states: "The following are proper cases for the application of Section 1164 and hence involve valid payments: Where payment is made to the original creditor by a debtor who has no knowledge of the assignment of the credit or the incapacity of the former; where the payment is made in favor of an assignee, recognized as such, even if the rescission or nullity of the conveyance is subsequently decreed; and when made to persons who, like heirs, are in the position of creditors. In these cases *the debtor cannot be prejudiced because of the fact that those to whom payment is made should later be defeated in an action, nor those who might win the case have no other remedy but to recover from the person who unduly collected.*" (Italics ours.)

Scaevola also approves of this dctrine in his work, *Comentarios al Código Civil,* vol. 19, p. 897, thus:

"A most typical example of these possessions is where the presumptive heir, to whom we referred in dealing with heirship, receives the inheritance under an alleged full title, without really having it; for, as it is known, especially in the case of heirs in collateral line, it often happens that the right of the presumptive heir *ab intestato* easily vanishes.

"The presumptive heir, and in general the presumptive creditor, may or may not act in good faith in claiming the rights to which he is apparently entitled. Sometimes they suspect but at other times they ignore the nonexistence of the title with which they are invested. But in this particular, it is immaterial to the law *whether the creditor acted in good or bad faith,* for since the sole question is whether the payment is valid, and consequently, the possibility of a second claim against the debtor, the statute dispenses with any other consideration for this purpose *but the good or bad faith of the person making the payment.*" (Italics ours.)

In the complaint herein no bad faith was alleged on the part of the bank and, since it cannot be presumed, § 1118 of the Civil Code, *supra,* is therefore applicable. The bank had before it not only the possessor of the credit but the

person invested with the alleged status of a true creditor. According to Scaevola (vol. 19, p. 899), the latter is a necessary requirement in order that the payment made should release the debtor. To this same effect the Supreme Court of Spain rendered its judgments on Decemebr 6, 1895, and February 28, 1896.

Commenting on these judgments Martínez Ruiz, in his work *Código Civil,* vol. 7, p. 249, states: "The provisions of § 1164, pursuant to which payment made in good faith to the person who is in possession of the credit, shall release the debtor, are made clear by the judgments of December 6, 1895, and February 28, 1896, which may be presently consulted. According to those judgments, besides the good faith under which the payment is made, there must also concur on the part of the person who receives it, the *possession of the credit itself, not the possession of the document establshing the credit,* that is, *there must exist the apparent status of creditor, which should make the debtor rationally presume that the payment is legitimate and should have legal effect.*" (Italics ours.)

The bank merely paid in good faith to the person who had been declared heir by a court. It had no authority to disregard the decision of the court, nor was it incumbent upon the bank to go to the court and allege that the decision rendered was void. In so far as the bank was concerned, José Manuel Rodríguez had the apparent status of a creditor because he had been declared by the court heir of José Rodríguez Pérez, former owner of the credit. Every presumption is in favor of the legality of a judgment rendered by a competent court, *Moral & Co.* v. *Diez et al.,* 16 P.R.R. 314, and it should not be presumed that the bank in this case acted in bad faith since, as we have already said, bad faith was not alleged or proved by the plaintiffs.

The cases invoked by the appellants are not applicable to the state of facts present in the case at bar. In *Kansas*

*Milling Co.* v. *Royal Bank of Canada,* 52 P.R.R. 95, we decided that a bank which accepted for collection drafts accompanied by specific instructions that the same should not be delivered to any person other than the drawee, if it delivers them to another bank for collection and the latter closes its doors after collecting them, the bank becomes liable to the drawer of the drafts for their amount. As may be seen, the question involved therein has no relation whatsoever to the one under consideration. *Pérez Casalduc* v. *Díaz Mediavilla,* 41 P.R.R. 345, and *Anaud* v. *Martínez* 40 P.R.R. 641, are not applicable, either, because they deal with questions relating to a mortgage creditor.

In our opinion, the errors relating to the grounds set forth under letters (*a*) and (*e*) were not committed.

 The last assignment is to the effect that, since the inheritance tax had not been paid at the time the defendant bank made the payment, the latter is void and cannot prejudice appellants. An examination of § 12 of Act No. 99 of August 29, 1925 [1] is sufficient to bring us to the conclusion that the error assigned lacks merit. The Act does not prohibit the debtor from paying its debt to the heir without the latter having previously paid the inheritance tax, and if the Act does not require such thing we cannot judicially add such a requirements to the statute.

The judgment appealed from is affirmed.

Mr. Justice Snyder did not participate herein.

---

[1] This Section, in so far as pertinent, provides: "No court shall approve the partition or distribution of the estate of any decedent or allow any final settlement of the accounts of any executor, administrator, trustee or person administering any estate, unless the proper special tax receipt or receipts of the Treasurer, as provided in section 11 of this Act, shall be produced and exhibited; and no notary shall issue, authorize or certify any instrument of award, partition, distribution, alienation or hypothecation of property unless such receipt or receipts of the Treasurer are presented; and no registrar shall record in any registry under his charge any instrument or judicial decision, ruling or judicial warrant authorized, rendered or issued in connection with the partition, distribution or delivery of such property, unless such receipt or receipts of the Treasurer are presented; and persons violating the provisions of this section shall be liable for all taxes uncollected, . . ."